Case number 319-0366, people of the state of Illinois, Appalachia v. Jacob Penning, appellant. Mr. Weaver, are you ready? Yes, your honor. Thank you. Good afternoon, your honors and counsel. My name is Adam Weaver with the Office of the State Appellate Defender and I represent the defendant Jacob Penning. May it please the court. Mr. Penning is appealing his conviction for endangering the life or health of a child. He argues that he was not proven guilty beyond a reasonable doubt. Now, the relevant facts of this case are fairly straightforward. Mr. Penning agreed to watch his girlfriend Amanda's five-year-old son while she went to work. Penning and the child, BL, took Amanda to work and then picked up Penning's brother, Joseph Shepherd, on the way back to the apartment. Penning and Shepherd hung out for a while in the apartment and then Penning started a movie for BL in his room when it was time for him to go to bed. Now, afterward, Penning briefly left to go buy drugs, came back to the apartment, locked himself in the bathroom, and overdosed on heroin. Penning's brother, Joseph, found him and called for help. When the paramedics and police arrived, they resuscitated Penning and found drugs and paraphernalia in the bathroom with him. An officer noted that BL was, at that time, sitting on a couch in the living room closest to the bathroom. Penning was taken to the hospital and the police left BL in Shepherd's care, and they both joined Penning at the hospital later that night. Mr. Penning was charged and convicted of endangering the life or health of a child after a bench trial, and on appeal, he argues that he was not proven guilty beyond a reasonable doubt. Now, a person endangers the life or health of a child either by conduct that actually harms the child or by placing a child in danger of probable physical or mental harm. Now, in this case, BL was not actually harmed, so the question this court must decide is whether the state proved beyond a reasonable doubt that BL was placed in the danger of probable physical or mental harm, and that answer is no. Now, it's reasonable to say that BL could have been in danger of physical harm if Penning's overdose had left him unattended in the apartment. Leaving a child unattended is a really common situation for endangering the life or health of a child, but BL was not left alone. Penning's brother, Joseph, was there in the apartment the whole time. Shepherd, he just wasn't in the house. He found that Penning had overdosed, called for help, and then took care of BL the whole time. Now, it's also reasonable to believe that BL could have been in danger of physical harm if he had gotten ahold of any of the drugs in the bathroom, but there's no evidence that BL had any unsupervised access to the drugs in the bathroom. Again, Joseph Shepherd was there the whole time. He found Penning and called for help. There's no reason to believe that Shepherd allowed BL to have any access to the bathroom or the drugs. Also, the state provided at trial no evidence that BL was placed in any probable any danger of probable mental harm either. There's nothing in the record to show that BL was even aware of the significance of what was happening in the apartment. The state argues on appeal that BL could have been mentally harmed because he could have seen Penning passed out in the bathroom. Now, however, the evidence does not show that BL even observed Penning passed out in the bathroom. The only evidence was that BL was in his bedroom watching movies before Penning went into the bathroom and that he was sitting in the living room when the even if we assume that BL could have seen Penning in the bathroom, there's no evidence that the five-year-old child would have even recognized or understood that Penning was experiencing a drug overdose in order to cause him to have that mental harm. So the fact that BL may have experienced mental trauma if he saw Penning passed out in the bathroom and if he understood the significance of a drug overdose is a string of inferences that's not supported by the record. So we're only left to guess whether BL actually observed Penning or if he would have sustained mental trauma from doing so and we just don't know what he saw. So for all these reasons, the state failed to prove Penning guilty beyond reasonable doubt and he requests that the court reverse his conviction. Thank you. All right, are there any questions? No. All right. Thank you, Mr. Reaver. Ms. Navarro, you may proceed. Thank you, Judge. Corinne Navarro on behalf of the people of the state of Illinois may please the court. The defendant was convicted of child endangerment followed by a bench trial. Now, in order to violate the child endangerment statute, it must be shown to the court that a person knowingly placed a child in a circumstances that could cause harm or that the person knowingly caused danger to the child. Now, the defendant is alleging that there was not sufficient evidence presented during trial in order to support the bench trials conviction. As such, all of the evidence presented during trial and in the record is viewed in the light most favorable to the prosecution. This means that all inferences are also viewed in favor of the prosecution. Now, in order to determine whether the defendant violated the child endangerment statute, it's important to know that in danger does not require actual harm. The Illinois Supreme Court and people versus Jordan established that in order to show in danger, you could show that the conduct by the defendant has the possibility or potential of injury. Here, in reviewing the record in the light most favorable to the prosecution, it is clear that the defendant placed the five-year-old child in a situation where there was the possibility or potential for injury. Defendant was the sole responsible individual for his son, a five-year-old child. The mother was at work and defendant was in the apartment watching the child. Officers responded to a call of overdose and when they walked into the apartment, the officer described a circumstance and situation that the defendant had placed his son in. Upon entering the apartment, the officer saw a small child sitting in the couch closest to the bathroom. Once the officer reached the bathroom, he was able to see the defendant passed out on the floor barely breathing and bleeding. Now, surrounding the defendant was multiple bags of syringes as well as multiple bags of a white powder substance, which defendant during trial admitted was heroin. Now, the circumstances that defendant placed this child in was within access to both syringes and drugs. The child was sitting in the living room closest to the bathroom when the officer arrived and the defendant himself testified during trial that he had left the child in a room watching television when he decided that he was going to call somebody to have him the bathroom, injected the heroin, and blacked out. Now, while the defendant argues that no harm came to the child due to a third party being present, this does not negate the fact that defendant placed the child in a situation that had the possibility or the potential for harm. In the case of People v. Jordan, the defendant left the child alone in a vehicle while he went into the bookstore. There, no harm came to the child, yet the court still determined that there was a possibility and potential for harm because a passerby could have caused harm to the child. There, the court reasoned that when there is a potential for harm, that in itself is sufficient to establish that their child was endangered. Here, the same thing occurred. While there was a third party present in the apartment, the defendant himself stated that he was the sole person responsible for the child. The third person was in the apartment when the defendant went outside, purchased the drugs, came back, and went straight into the bathroom. At no point did the defendant ensure that Shepherd, the third person, would be responsible and take care of the child. As a trial court explained during the trial, there was nothing that showed that Shepherd would remain in the apartment and would actually take care of the child. Now, while no harm came of the child, that is not what is at issue today. The issue would be what defendant knew at the time that he chose to inject himself with heroin. At the time that he chose to go into the bathroom, he did not ensure that somebody would be responsible for the child, and he did not ensure that the child would be safe from both the drugs and from the circumstances that occurred. When paramedics showed up to the apartment, they had to rip the defendant's shirt off in order to administer aid, and this all occurred while the child was sitting in the living room. Here, the record clearly shows that the defendant placed the child in danger. The environment that was created by the defendant had the possibility and the potential for injury, both to the life and health of the child. As such, we ask that this court affirm the trial court's judgment. Thank you. Questions? Thank you, Your Honor. Your Honor, the state argues that Mr. Penning clearly put BL in a probability of physical harm by bringing drugs into the house and not ensuring that someone else was there to take care of him. Now, the state cites People v. Jordan, where the Supreme Court did say that because the defendant in that case left the child unattended in the car for an extended period of time, that it was probable or could be likely that anyone in the public area that was in could have harmed that child. But unlike that case, in this case, Penning didn't leave BL alone in the house. Like I said, Joseph Shepard was there the entire time. Now, like I said, there's no reason to believe that Shepard would have allowed BL to have any access to the drugs in the room. Now, it's not enough that Penning brought drugs into the house. Yes, I think we can all agree that was not a great idea, but the focus on drugs and how they're dangerous really distorts the issue here. There are plenty of other potentially dangerous things in the apartment, you know, cleaning chemicals or kitchen knives. But instead of drugs, what if BL had an allergy, like a deadly peanut allergy? And, you know, would Penning be guilty of endangering a child just by bringing peanut butter into the apartment in that situation? I mean, what if he left the jar out on the kitchen table? Does that place BL in danger of probable physical harm? Is it likely that he would experience physical harm because it was only sitting in the kitchen? Even if he ate peanut butter? I mean, no, we would definitely agree that it would be careless for him to do that, but not criminally careless. Now, the analysis doesn't change just because drugs are so dangerous. The state had to show that BL had access to the drugs in the bathroom, and there's just no evidence in the stipulated police report or the evidence at trial that he had access to those drugs. The prosecutor had to show, beyond a reasonable doubt, that under the circumstances of this case, BL was placed in danger of probable physical harm. And that, meaning that physical harm was likely to occur based on the circumstances, and they just did not do so in this case. So for all these reasons, Mr. Penning asks that this court reverse his conviction. Thank you. Any questions? Thank you, Mr. Reaver. No questions. Thank you both for your argument today. Regardless of this matter, under-advisement is granted with a written disposition within a short time. We'll now take a recess until 1.30.